NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAWN HARTFELDER, <br><br> Plaintiff, <br><br> v. <br><br> NEW JERSEY STATE POLICE *et al.*, <br><br> Defendants. | Civ. No. 16-5461 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion for Summary Judgment filed by the only remaining Defendants, New Jersey State Police Troopers Geoffrey L. Clark and W.H. Cox (collectively, "Defendants"). (ECF No. 28.) Plaintiff Dawn Hartfelder ("Plaintiff") opposes. (ECF No. 33.) The Court has decided the Motion based on the written submissions and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendants' Motion for Summary Judgment is granted in part and denied in part.

## BACKGROUND

**I.     The Traffic Stop**

This action arises from a simple traffic stop for speeding that ultimately escalated to an arrest for Obstructing the Administration of Law. On September 23, 2014, Defendants were positioned in Troop Car 526 at the intersection of Old Main Street and Kitchen Road in Franklin Township, New Jersey. (Defs.' Statement of Material Facts ("SOMF") ¶ 1, ECF No. 28-1.) At approximately 2:46 PM, Defendant Clark observed a white Chevrolet sedan, later identified as

1

Plaintiff's vehicle, traveling 47 mph in a 25-mph zone. (*Id.* ¶¶ 3–4.) Defendants pursued Plaintiff's vehicle and eventually activated the overhead warnings lights and siren. (*Id.* ¶¶ 5–6.) Plaintiff slowed down but passed a location that, Defendants contend, had a sufficiently wide shoulder for a traffic stop and, instead, drove an additional 400 feet before eventually coming to a stop at a location that did not have a shoulder such that Plaintiff's vehicle partially blocked the road. (*Id.* ¶¶ 7–12.) Plaintiff lives in the area and submits that she determined that this place would be the safest place to pull over, which is roughly three car-lengths away from her house. (Pl.'s Suppl. SOMF ¶¶ 2–3, ECF No. 33.)

After Plaintiff stopped her vehicle, she opened the driver-side door. (Troop Car Video at 14:47:41, Ex. B, ECF No. 33-1.) Plaintiff is not seen attempting to exit the vehicle, but Defendant Clark yelled, "Get back in the car and shut your door." (*Id.* at 14:47:43–45.) Plaintiff complied and closed the vehicle's door. (*Id.* at 14:47:48.) Defendants allege that Plaintiff had "slammed" her door shut in response (Defs.' SOMF ¶ 17), but Plaintiff contends that she "closed her door, without slamming it" (Pl.'s Resp. SOMF ¶ 17, ECF No. 33). Plaintiff claims that she had opened the door to yell at the deliverymen in front of her house to let them know that she was there to accept the delivery. (Pl.'s Suppl. SOMF ¶¶ 4, 6–7.)

Defendants approached Plaintiff's vehicle from the passenger-side door, but the passenger-side window was closed. Defendant Clark knocked on the window. Defendants contend that Plaintiff then rolled her passenger-side window down only about one inch, though Plaintiff contends it was about three and a half inches. (*Compare* Defs.' SOMF ¶ 21, *with* Pl.'s Resp. SOMF ¶ 21.) Defendant Clark then said, "Roll the window down for me, ma'am." (Troop Car Video at 14:48:25.) In response, Defendants contend that Plaintiff lowered the window another half inch, while Plaintiff contends that it was another inch. (*Compare* Defs.' SOMF ¶

2

23, *with* Pl.'s Suppl. SOMF ¶ 15.) At this point, Plaintiff believes that the passenger-side window was down approximately four and a half inches total, which she characterizes as "sufficiently lowered . . . to allow the Defendants to communicate with Plaintiff and allow[] adequate room for Plaintiff to provide the Defendants with her license, registration, and insurance" (Pl.'s Resp. SOMF ¶¶ 24–25); Defendants believe it was about one and a half inches total (*see* Defs.' SOMF ¶¶ 21, 23).

Defendant Clark directed Plaintiff another three times to roll down her window, all within a few seconds of one another. (*See* Troop Car Video at 14:48:28–32 ("Ma'am roll the window down so I can talk to you or I'm going to remove you from the car and arrest you."), 14:48:33–36 ("Roll the window down so I can talk to you, now."), 14:48:39–44 ("Roll the window down and give me your license, registration, and insurance. Do it now—last time.").) Plaintiff can be heard responding to Defendant Clark each time, but the Troop Car Video submitted to the Court is unable to detect what she said. Defendants contend that she was "argu[ing] that she did not have to cooperate with [Defendants] and that she knew her constitutional rights." (Defs.' SOMF ¶ 26.) However, Plaintiff contends that she "made no such arguments" and "was trying to explain to Defendants that she read an article from the ACLU on how to interact with police officers during a traffic stop and that this article indicated she was not required to lower her window all the way down." (Pl.'s Resp. SOMF ¶ 26.)

Defendant Clark waited about two seconds after his "last time" warning before he circled around the back of the vehicle and approached the driver-side door. Defendant Clark attempted to open the driver-side door, but it was locked.[1] (Troop Car Video at 14:48:50.) Without

---

[1] Defendants allege that "Plaintiff turned in her seat and locked the driver's side door" in response to Defendant Clark's advancement, but Plaintiff contends that she "has a habit of

hesitation, Defendant Clark responded, "Open the door or I'm going to break the window." (*Id.* at 14:48:51–53.) When Plaintiff did not comply, Defendant Clark called on his radio for backup assistance. (*See id.* at 14:48:54–59; Defs.' SOMF ¶ 37.)

Defendant Clark gave one final warning: "Roll the window down, unlock the door, or I'm going to break the car—last chance."[2] (Troop Car Video at 14:48:59–14:49:03.) By the Court's approximation, Defendant Clark waited two seconds after his "last chance" warning before he struck the driver-side window with his baton, shattering the window.[3] (*Id.* at 14:49:05.) Defendant Clark reached into the car through the broken window, unlocked the door, and pulled Plaintiff out from the vehicle. (*Id.* at 14:49:07–13.) Plaintiff did not seem to resist. Defendant Clark guided Plaintiff to the rear of the vehicle, where he handcuffed her (*id.* at 14:49:13–45); however, Plaintiff alleges that Defendant Clark "aggressively removed" her from the vehicle and "slammed [her] onto her trunk" (Pl.'s Suppl. SOMF ¶ 28). Defendants then placed her in the Troop Car, recited to her a *Miranda* warning, gathered her documents, and eventually transported her to the Washington Barracks. (Defs.' SOMF ¶¶ 53–59.) From Defendant Clark's first request to roll down the window to Defendant Clark's shattering of the window, approximately forty seconds had passed.

While en route to the Washington Barracks, Defendant Clark dispatched first-aid responders to examine Plaintiff upon arrival. (*Id.* ¶ 60.) The Mansfield Emergency Services Patient Records indicate that Plaintiff had sustained "a few minor lacerations/abrasions from the

---

locking the door when she closes it and [had] locked the door here when it was closed at the outset of this traffic stop." (*Compare* Defs.' SOMF ¶ 34, *with* Pl.'s Resp. SOMF ¶ 34.)
[2] Plaintiff alleges that she was attempting to comply by finding the requested paperwork. (Pl.'s Suppl. SOMF ¶¶ 17, 19–21.)
[3] Defendants deny that two seconds had elapsed (*see* Defs.' Resp. to Pl.'s Suppl. SOMF ¶ 23, ECF No. 36-1), but about two seconds pass on the Troop Car Video.

broken glass" but would "not allow [responders] to assess wounds." (Patient Record at 3, Ex. D, ECF No. 38.) Plaintiff signed a form acknowledging that she refused medical treatment (Patient Refusal Form, Ex. E, ECF No. 38 (acknowledging that Plaintiff refused medical treatment)), though she asserts that she did not "refuse" medical treatment insofar as she "did not know who these people were and was in such a state of shock that she did not want anyone touching her" (Pl.'s Resp. SOMF ¶ 66). The Patient Records also note that "bleeding had stopped by normal means" by the time responders arrived. (Patient Record at 3.) She did not need stitches for the lacerations, and no scarring or permanent injury resulted. (*See* Hartfelder Dep. 119:8–120:21, Exs. H, A, ECF Nos. 28-5, 33-1 (describing extent of injuries suffered).)

## II.  Plaintiff's Charges, Trial, Conviction, and Appeal

Plaintiff was ultimately charged with (1) Resisting Arrest in violation of N.J.S.A. § 2C:29-2(a)(3)(b), (2) Hindering Apprehension in violation of N.J.S.A. § 2C:29-3(b)(2), (3) Obstructing the Administration of Law in violation of N.J.S.A. § 2C:29-1(a), and (4) speeding in violation of N.J.S.A. § 39:4-98. (Defs.' SOMF ¶¶ 75–79.) The Resisting Arrest charge was ultimately dropped. (*Id.* ¶¶ 80, 83.) The Bethlehem and Bloomsbury Municipal Court conducted a two-day, non-jury trial for the remaining charges on May 16, 2017 and July 25, 2017. (Defs.' SOMF ¶ 81.) The court found Plaintiff guilty of Hindering Apprehension, Obstructing the Administration of Law, and speeding. (*See* Trial Tr. 71:20–72:5, 76:13–19, 77:24–78:15 (July 25, 2017), Ex. L, ECF No. 28-5.)

Plaintiff appealed the guilty verdict to the New Jersey Superior Court, Law Division, Criminal Part, Hunterdon County, and on June 7, 2018, the court issued an opinion and order. (*See* Super. Ct. Op., Ex. M, ECF No. 28-5; Super. Ct. Order, Ex. N, ECF No. 28-5.) First, the court found that Plaintiff was guilty of Obstructing the Administration of Law. (*See* Super. Ct.

5

Op. at 9–11.)  The court explained that Plaintiff "failed to obey reasonable orders given by [Defendant] Clark and that she failed to turn over her credentials . . . as [Defendant] Clark attempted to issue [Plaintiff] a summons for speeding." (*Id.* at 9.)  Defendant Clark's requests to lower her window "were obviously reasonable" and, regardless of whether the window was low enough to turn over her credentials, Plaintiff did not do so and thus failed to "comply fully with [Defendant] Clark's reasonable requests." (*Id.* at 10.)  The court "d[id] not find [Plaintiff]'s testimony credible that her fear presented her an excuse not to comply or negated her mental state." (*Id.*)  Second, the court found that Plaintiff was not guilty of Hindering Apprehension. (*Id.* at 12.)  The court concluded that "there [was] insufficient evidence to sustain a conviction for Hindering as there was no testimony that [Plaintiff] used any force or intimidation to prevent [Defendant] Clark from carrying out his duties," explaining that "[Defendant] Clark indicated upon being removed from the vehicle [that Plaintiff] 'became compliant' and that it was not a 'resistive process.'" (*Id.*)

### III.  Procedural History

Plaintiff filed this action on September 9, 2016 (ECF No. 1) and filed the Amended Complaint on October 12, 2016 (ECF No. 3).  The Amended Complaint alleges claims against the New Jersey State Police and several New Jersey State Police Troopers, including Defendant Clark, Defendant Cox, Colonel Joseph R. Fuentes, Sergeant S.J. Bara, and Trooper A.A. Parker. (*Id.* ¶¶ 5–10.)  All Defendants-at-the-time moved to dismiss on December 13, 2016. (ECF No. 4.)  On July 26, 2017, the Court granted in part and denied in part, dismissing all Defendants-at-the-time except Defendants Clark and Cox in their individual capacities. (Order at 1–2, ECF No. 10.)  Two claims remain against Defendants Clark and Cox based upon their allegedly inflicting personal injury by means of improper and excessive force in violation of (Count I) the Fourth

6

Amendment of the United States Constitution via 42 U.S.C. § 1983 (Am. Compl. ¶¶ 31–34) and (Count II) the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-1 (Am. Compl. ¶¶ 35–38). (*See* Mem. Op. at 7–8, 9–10, ECF No. 9 (excessive force claims surviving motion to dismiss).) This action was reassigned to the Honorable Anne E. Thompson on February 27, 2018. (ECF No. 22.)

Defendants filed the instant Motion for Summary Judgment on April 8, 2019. They argue that (1) their use of force was objectively reasonable under the circumstances; and (2) even if it were not, they are entitled to qualified immunity because their conduct did not violate a clearly established right. (*See* Defs.' Br. at 12–25, ECF No. 28-2.) Plaintiff opposed the Motion on May 13, 2019. Defendants replied on June 3, 2019. (ECF No. 36.) The Motion for Summary Judgment is currently before the Court.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*,

7

298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Plaintiff's claim arises under 42 U.S.C. § 1983, "which provides a cause of action for any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of law." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (internal citation omitted). "Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." *Id.* "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 416–17 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Supreme Court has articulated a two-step inquiry for determining whether a police officer is entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

> In the first step, a court must address whether the officer's conduct violated a constitutional right. In an excessive force case, whether there is a constitutional violation is properly analyzed under [*Graham v. Connor*'s] Fourth Amendment's

> objective reasonableness standard. . . .
>
> If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability. The question at this second step is whether the right that was violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Curley*, 499 F.3d at 206–07.

However, "there is a degree of duplication inherent in [*Saucier*'s] two-part scheme as applied to excessive force cases" insofar as "the question whether the amount of force an officer used was unreasonable and violated the Fourth Amendment may be viewed as blending somewhat into the question whether the officer reasonably believed that the amount of force he used was lawful." *Bennett v. Murphy*, 120 F. App'x 914, 917 (3d Cir. 2005) (internal citation omitted). But an officer may still be entitled to qualified immunity even if his actions are unreasonable under *Graham*'s constitutional standard. *See id.*

> Thus, the first step of the analysis addresses whether the force used by the officer was excessive, and therefore violative of the plaintiff's constitutional rights, or whether it was reasonable in light of the facts and circumstances available to the officer at the time. . . . The second step is the immunity analysis and addresses whether, if there was a wrong, such as the use of excessive force, the officer made a reasonable mistake about the legal constraints on his actions and should therefore be protected against suit.

*Curley*, 499 F.3d at 206–07. Summary judgment is warranted if the defendant carries his burden in regard to either prong. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). The Court addresses each prong in turn.

**I.  Whether Defendant Clark's Conduct Was Objectively Reasonable under the Circumstances**

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV; *see also Groman v. Twp. of*

9

*Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) ("An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person."). "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The reasonableness inquiry, "a pure question of law," *Johnson v. City of Philadelphia*, 837 F.3d 343, 349 (3d Cir. 2016), generally considers "whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 397).

A variety of factors are considered when determining whether the force used to effect a particular seizure is reasonable under the facts and circumstances of the case. *See Graham*, 490 U.S. at 397. The determination "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

> Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. A court in making a reasonableness assessment also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Kopec*, 361 F.3d at 776–77 (citing *Graham*, 490 U.S. at 396; *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)); *see also Estate of Smith v. Marasco*, 430 F.3d 140, 149–50 (3d Cir. 2005).

"[D]efendants can . . . win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Kopec*, 361 F.3d at 777 (citing *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999)).

Resolving all factual disputes in favor of Plaintiff, the non-movant, the Court finds that a reasonable jury could conclude that Defendant Clark's use of force was not objectively reasonable under this particular set of circumstances. Analyzing each of the considerations set forth by the U.S. Court of Appeals for the Third Circuit, *see Kopec*, 361 F.3d at 776–77, the Court first begins with the severity of the crime. Defendants initially pulled Plaintiff over for speeding: more specifically, traveling 47 mph in a 25-mph zone. (Defs.' SOMF ¶ 3–4.) This traffic infraction was not a major crime. Although Plaintiff escalated the traffic infraction to Obstructing the Administration of Law, that offense lacks the seriousness that typifies a charge such as resisting or hindering arrest. *See Sussino v. N.J. Div. of State Police*, 2012 U.S. Dist. LEXIS 149948, at *24 (D.N.J. Oct. 18, 2012) (noting, while determining summary judgment motion in § 1983 claim for excessive force, that "Obstructing the Administration of Law, § 2C:29-1, was not a severe [crime]").

Second, Plaintiff did not pose an immediate threat to the safety of the officers or others. The incident occurred in the middle of the afternoon on a sunny day with no one in the vicinity. Plaintiff complied with Defendants insofar as she pulled her car to the side of the road after an arguably reasonable amount of time and turned off the engine. Although Plaintiff opened the driver-side door as soon as she pulled over, Plaintiff did not appear to attempt to exit the vehicle

11

in any way, and she immediately complied with Defendant Clark's request to close the door.[4] (Troop Car Video at 14:47:41–48.) Moreover, after Defendants approached the vehicle, Plaintiff did not appear to yell or raise her voice, brandish a weapon, move or shift in an aggressive or inexplicable way, or attempt to evade or escape. Plaintiff, an unaccompanied woman of average frame, had none of the indicia of being violent or dangerous. She simply refused to lower her window more than four and a half inches—a height she says she felt was sufficient to facilitate her interaction with Defendant Clark. (*See* Pl.'s Resp. SOMF ¶¶ 24–25.)[5] Likewise, the Superior Court Opinion corroborates this understanding, finding that "there was no testimony that [Plaintiff] used any force or intimidation to prevent [Defendant] Clark from carrying out his duties" and that "[Defendant] Clark indicated upon being removed from the vehicle [that Plaintiff] 'became compliant' and that it was not a 'resistive process.'" (Super. Ct. Op. at 12.)

Finally, the duration of the traffic stop is perhaps the most striking factor in assessing Defendant Clark's reasonableness. Plaintiff stopped her vehicle at 2:47:34 PM. Defendant Clark approached Plaintiff's vehicle and first requested that she roll down her window at 2:48:25 PM. Upon only his second request, seconds after the first, Defendant Clark threatened to "remove [her] from the car and arrest [her]." (Troop Car Video at 14:48:28–32.) After Defendant Clark circled the vehicle and gave Plaintiff one final warning—"Roll the window

---

[4] Plaintiff contends that she opened her door to inform the deliverymen in front of her house that she was there to accept the delivery. (Pl.'s Suppl. SOMF ¶¶ 4, 6–7.) Because Defendant Clark evidently did not hear this information, and because an officer's conduct is viewed objectively from his vantage point and known information at the time, the suggestion that Plaintiff's opening of her door was innocuous is irrelevant. *See Graham*, 490 U.S. at 396–97 (explaining that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight").

[5] Although Defendants contend that Plaintiff lowered her window only one and a half inches (*see* Defs.' SOMF ¶¶ 21, 23), all factual disputes must be resolved in the favor of Plaintiff, the non-movant.

down, unlock the door, or I'm going to break the car—last chance"—Defendant Clark waited only about two seconds before striking the driver-side window with his baton, shattering the glass onto Plaintiff at 2:49:05 PM. (*See* Troop Car Video at 14:48:59–14:49:05.) It is unclear whether Defendant Clerk could have evaluated in that time whether Plaintiff was willing to comply with his "last chance" warning. The roughly forty total seconds that elapsed in between Defendant Clark's first request and the baton swing is problematic, considering that Plaintiff did not pose any immediate threat to safety.[6]

The Court recognizes that the perceived "reasonableness" of Defendant Clark's temperament and conduct may vary among "reasonable jurors," especially with the context of previous encounters with law enforcement officials. Partially for this reason, it finds that a reasonable jury could find that Defendant Clark's use of force was not objectively reasonable under this particular set of circumstances. The degree of physical force applied must be "proportional to the need for force." *Woods v. Grant*, 381 F. App'x 144, 147 (3d Cir. 2010). But here, a reasonable jury could find that Defendant Clark's use of force was disproportionate.

The Court also notes that this Opinion does not run afoul of *Heck v. Humphrey*, 512 U.S. 477 (1994), or ignore the legitimacy of the Superior Court's subsequent affirmance of Plaintiff's conviction. *See Deemer v. Beard*, 557 F. App'x 162, 164 (3d Cir. 2014) (interpreting *Heck* as "hold[ing] that a plaintiff may not challenge the constitutionality of his conviction or sentence in a § 1983 action unless he can demonstrate that the prior criminal proceeding terminated in his

---

[6] Defendants emphasize the fact that Plaintiff received lacerations from the incident so minor that she refused medical treatment once she was transported to the barracks. (*See* Defs.' Br. at 16–17.) However, the Court must avoid "the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396–97, so the extent of her actual injuries is not determinative. When Defendant Clark shattered the glass window, Plaintiff turned and used her hands to protect her face. (Pl.'s Resp. SOMF ¶ 37.)

favor"). Plaintiff's conviction, Obstructing the Administration of Law, focused on Plaintiff's defiance in response to "reasonable orders given by [Defendant] Clark" to lower her window. (Super. Ct. Op. at 9.) Plaintiff does not now challenge the reasonableness of Defendant Clark's initial request, but the disproportionality of Defendant Clark's reaction to her refusal to comply fully with the request. These notions are not mutually exclusive; Plaintiff's conviction of Obstructing the Administration of Law does not preclude her Fourth Amendment claim for excessive force. *See Jacobs v. Bayha*, 616 F. App'x 507, 513 (3d Cir. 2015) ("[A]lthough the doctrine of *Heck v. Humphrey* does not necessarily bar an action for excessive force by a person convicted of assault, it can operate as a bar where specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." (internal citation omitted)); *Garrison v. Porch*, 376 F. App'x 274, 277 (3d Cir. 2010) ("This Court has previously determined that a conviction for resisting arrest does not necessarily preclude an arrestee for recovering damages on a § 1983 excessive force claim." (citing *Nelson v. Jashurek*, 109 F.3d 142, 145–46 (3d Cir. 1997) (holding that a reasonable juror, considering the totality of the circumstances, could find that the arrestee resisted arrest, but was still subjected to an unreasonably excessive level of force by the police officer in response))).

## II.  Whether Defendant Clark Violated a "Clearly Established" Right

Having determined that sufficient evidence exists in connection with Defendant Clark's use of excessive force that Defendants violated Plaintiff's Fourth Amendment right to be free from unlawful seizure, the Court turns to whether the right that was violated was clearly established. Again, this inquiry focuses on "whether the right that was violated was clearly established, or, in other words, 'whether it would be clear to a reasonable officer that his conduct

14

was unlawful in the situation he confronted.'" *Curley*, 499 F.3d at 206–07 (quoting *Saucier*, 533 U.S. at 202).

At this point in the qualified-immunity analysis, the issue is no longer whether a reasonable jury could find that Defendant Clark's conduct was objectively unreasonable; room for reasonable disagreement about the application of law is not enough. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("[*Tennessee v.*] *Garner* and *Graham* do not by themselves create clearly established law outside 'an obvious case.'" (citing *Brosseau v. Haugen*, 543 U. S. 194, 199 (2004))). Instead, "[t]he inquiry focuses on the state of the relevant law when the violation allegedly occurred" because "[f]or a right to have been 'clearly established,' 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Thus, '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Green v. N.J. State Police*, 246 F. App'x 158, 162 (3d Cir. 2007) (quoting *Saucier*, 533 U.S. at 202).

The "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015)). In *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) (per curiam), for instance, the Fifth Circuit reversed the district court's finding of qualified immunity for the officers at summary judgment and concluded that "a jury could reasonably find that the *degree* of force the officers used in this case was not justifiable under the circumstances." *Id.* at 168 (emphasis in original). The driver had been pulled over for simply speeding and, after expressing discontent over being pulled over, refused to step out of the

15

vehicle when asked by the officer. *Id.* at 161–62. The court explained that, like here, the officer "engaged in very little, if any, negotiation with her . . . [and] instead quickly resorted to breaking her driver's side window and dragging her out of the vehicle." *Id.* at 167–68 (noting that pulling over a driver for speeding "mak[es] the need for force substantially lower than if she had been suspected of a serious crime"). The court emphasized that "continued negotiations are more appropriate than actual force where the suspect is only stopped for a minor traffic offense and is making no attempt to flee." *Id.* at 168.

Though *Deville* was issued in the Fifth Circuit, the Third Circuit has tacitly agreed that "[s]ome factors unquestionably counsel against any serious use of force," *Ickes v. Grassmyer*, 704 F. App'x 190, 193 n.3 (3d Cir. 2017) (citing *Deville* and *Coles v. Eagle*, discussed below), and numerous other courts have issued similar opinions in regard to similar facts.[7] The Ninth Circuit also reversed an entitlement of qualified immunity where the officer smashed the driver-side window and then pulled the driver through that window; the officer's use of force was considered excessive, despite the fact that he was faced with a more threatening situation than the one here. *See Coles v. Eagle*, 704 F.3d 624, 626, 628–30 (9th Cir. 2012) (reversing entitlement of qualified immunity where officers initially pulled over suspected stolen car, at

---

[7] *See, e.g.*, *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) (holding that when arrestee had not committed a serious crime, posed no immediate threat, and did not actively resist arrest, "the officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive" (emphasis in original)); *Odom v. Matteo*, 772 F. Supp. 2d 377, 389 (D. Conn. 2011) (finding use of force excessive at summary judgment where officer forcibly removed driver, who was "passively resisting [the officer's] requests" but not otherwise attempting to flee or using any threatening words or actions, from car for "minor traffic infractions"); *Russell v. City of Roseville*, 2010 U.S. Dist. LEXIS 30545, at *16 (E.D. Mich. Mar. 30, 2010) (denying officers' motion for summary judgment in regard to excessive force claim where officer shattered driver-side window in response to driver's refusal to exit his vehicle, despite orders to do so, in part because driver did not pose an immediate threat to the safety of the officers).

night, and ordered 200-pound man to exit but noticed that he made "furtive gestures"). Other cases may not be identical, but "the facts of the existing precedent need not perfectly match the circumstances of the dispute in which the question arises. Requiring that precedent and subsequent disputes rest on identical facts would license state actors to violate constitutional rights with impunity simply by varying some irrelevant aspect of constitutional violations." *Williams*, 848 F.3d at 570; *see also al-Kidd*, 131 S. Ct. at 2083 (finding that "a case directly on point" is not required for a right to be clearly established); *Hope v. Pelzer*, 536 U.S. 730, 753–54 (2002) ("That is not to say, of course, that conduct can be 'clearly established' as unlawful only if a court has already passed on the legality of that behavior under materially similar circumstances. . . . [O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

The degree of force Defendant Clark used to remove Plaintiff from the vehicle, once he breached the window, is an issue which prevents entitlement to qualified immunity at this time as reasonableness is the touchstone of an excessive-force analysis and therefore highly pertinent to the question of qualified immunity. *See Brown v. United States*, 851 F.2d 615, 619 (3d Cir. 1988) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). Accordingly, Defendants' Motion for Summary Judgment is denied in this regard.

### III. Whether Defendant Cox Breached His Duty to Intervene

Plaintiff does not allege that Defendant Cox, on the scene of the incident, exercised excessive force or otherwise affirmatively engaged in constitutionally violative conduct. Rather, Plaintiff lodges only one allegation against him: "[Defendant Cox] participated in the arrest and did nothing to prevent [Defendant] Clark's extreme and outrageous conduct or to otherwise aid plaintiff." (*See* Am. Compl. ¶ 15.)

17

Generally, "a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). A "fail[ure] or refus[al] to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Id.* at 650–51 (citing *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)) (noting that "[t]he approving silence emanating from the officer who stands by and watches . . . . is an endorsement of the constitutional violation resulting from the illegal use of force"); *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1193–94 (3d. Cir. 1995) (holding that officer could be liable in § 1983 suit even where he neither personally used, nor directed anyone to use, excessive force). However, "an officer is only liable if [he had] a realistic and reasonable opportunity to intervene" in the allegedly unconstitutional conduct. *Smith*, 293 F.3d at 650–51 (collecting cases).

The Court concludes here that Defendant Cox did not have a "realistic and reasonable opportunity to intervene" or stop Defendant Clark's conduct. Although Defendant Cox exited the Troop Car in tow with Defendant Clark, he remained at the rear of Plaintiff's vehicle during the entirety of Defendant Clark's interaction with Plaintiff. Defendant Clark first vocalized his intention to "remove [Plaintiff] from the car and arrest [her]" at 2:48:32 PM, but this threat did not put Defendant Cox on notice about the means by which Defendant Clark would remove and arrest her. (*See* Troop Car Video at 14:48:28–32.) Right after this threat, Defendant Clark called on his radio for backup assistance, suggesting to the reasonable viewer that no action would be taken until backup arrived. (*See id.* at 14:48:54–59.) But even if Defendant Cox had believed Defendant Clark when he eventually threatened to "break the window," Defendant Cox had, in hindsight, just seconds to act. (*See id.* at 14:48:51–53.) In fact, Defendant Clark shattered the

18

window with his baton only about two seconds after issuing his "last chance" warning. (*See id.* at 14:48:59–14:49:05 ("Roll the window down, unlock the door, or I'm going to break the car—last chance".).) This was not a "realistic" or "reasonable" time for Defendant Cox to intervene. Accordingly, because Defendant Cox did not have a realistic and reasonable opportunity to intervene or prevent Defendant Clark's allegedly violative conduct, summary judgment is entered in favor of Defendant Cox.

## IV. Whether Defendants Violated the NJCRA

Defendants also seek dismissal of Plaintiff's claims under the NJCRA. Much like the federal constitutional claims brought through the vehicle of § 1983, the NJCRA creates a private right of action against a "person acting under color of law" for violations of the New Jersey Constitution. N.J.S.A. § 10:6-2; *see, e.g.*, *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) (per curiam) ("The NJCRA is interpreted as analogous to § 1983."); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) ("The [NJCRA] was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[]."). Therefore, the Court's above analysis of the claims brought via § 1983 applies with equal force in the NJCRA context and requires no further explanation. Accordingly, consistent with that analysis, summary judgment is granted as to Defendant Cox but denied as to Defendant Clark.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part. An appropriate Order will follow.

Date:  07/15/2019                                           */s/ Anne E. Thompson*
                                                                        ANNE E. THOMPSON, U.S.D.J.